UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRIAN ROBERT SPAUDE,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>CORRECTIONS CORPORATION OF AMERICA, Inc., a foreign corporation; CCA WESTERN PROPERTIES, INC., an Idaho corporation; PHILIP VALDEZ, individually and in his official capacity; JOHN and JANE DOES 1-8, in their individual and official capacities,<br><br>　　　　　　　Defendants. | Case No. 1:10-cv-00551-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

　　　　Currently before the Court in this prisoner civil rights matter is Defendants'

Motion To Dismiss. (Dkt. 22.) Plaintiff has responded to the Motion (Dkt. 26),

Defendants have submitted a Reply (Dkt. 27), and the matter is now ripe. The parties

have consented to a United States Magistrate Judge conducting all proceedings, in

accordance with 28 U.S.C. § 636(c). (Dkt. 20.)

　　　　The Court finds that decisional process would not be aided by oral argument, and

it will resolve this matter upon consideration of the parties' written briefing. D. Idaho L.

Civ. R. 7.1(d). After considering the parties' arguments and the record herein, as

explained more fully below, the Court will deny Defendants' Motion.

**MEMORANDUM DECISION AND ORDER - 1**

# FACTUAL BACKGROUND

At all relevant times, Plaintiff was incarcerated at the Idaho Correction Center (ICC), which is a prison that is operated by the Corrections Corporation of America (CCA) under a contract with the state of Idaho. (Dkt. 1.)

In his Complaint, Plaintiff alleges that from 2005 to 2008 he was an intern for the "Therapeutic Community," a rehabilitative program offered at ICC. (Dkt. 1 at ¶ 13.) According to Plaintiff, TC interns often obtained sensitive information about other inmates during the course of their work, and the interns were housed in a separate wing at ICC because general population inmates viewed them as informants. (*Id.* at ¶ 14.) Despite ICC's policy of segregating these inmates, Plaintiff claims that on November 17, 2009, correctional officers allowed general population inmates to mix with the segregated inmates in the dining hall during a mealtime. (*Id.* at ¶ 16.) While Plaintiff was eating, another inmate came up behind him and struck him in the head, shattering his jaw and knocking him unconscious. (*Id.*) Plaintiff required surgery to repair his jaw and lost twenty-two pounds during his recovery. (*Id.* at ¶ 21.) He claims that this assault was symptomatic of a broader pattern and practice of deliberate indifference to inmate safety at ICC. (*Id.* at ¶ 11, a-g.)

Based on these allegations, Plaintiff brings five causes of action: two counts of negligence under state law (for the failure to protect him from the assault (Count I) and for inadequate medical care (Count III)); two counts of gross negligence under state law, based on willful, wanton, or reckless conduct (for the failure to protect him from the

assault (Count II) and for inadequate medical care (Count IV)); and one count arising under 42 U.S.C. § 1983, in which Plaintiff alleges that prison officials were deliberately indifferent to his safety in violation of the Eighth Amendment (Count V). (Dkt. 1, pp. 7-12.) The state law claims are brought under the Court's supplemental jurisdiction, 28 U.S.C. § 1367.

Defendants have filed a Motion to Dismiss portions of the Complaint on the ground that Plaintiff failed to exhaust the prison's administrative review process as to certain claims before beginning this action. (Dkt. 22.) The matter is fully briefed, and the Court is prepared to issue its ruling.

## STANDARD OF LAW

### 1. The Exhaustion Requirement

Because Plaintiff has raised one federal claim under 42 U.S.C. § 1983 and four related state law causes of action, Defendants' Motion to Dismiss implicates the exhaustion standards under both federal and state law.

Specifically, the Prison Litigation Reform Act (PLRA) requires pre-complaint exhaustion of administrative remedies for all *federal* claims brought by prisoners who challenge prison conditions: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). This requirement is

**MEMORANDUM DECISION AND ORDER - 3**

intended to give "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 204.

Proper exhaustion is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

Likewise, Idaho statutory law contains a similar requirement that prisoners must exhaust administrative remedies before proceeding with civil lawsuits:

> Unless a petitioner who is a prisoner establishes to the satisfaction of the court that he is in imminent danger of serious physical injury, no petition for writ of habeas corpus *or any other civil action* shall be brought by any person confined in a state or county institution, or in a state, local or private correctional facility, *with respect to conditions of confinement* until all available administrative remedies have been exhausted.

Idaho Code § 19-4206(1) (emphasis added). The Idaho Court of Appeals has interpreted this provision as requiring exhaustion for all civil actions that are related to conditions of confinement, which includes tort claims such as those raised here. *Drennon v. Idaho State Corr. Inst.*, 181 P.3d 524, 526, 530 (Idaho Ct. App. 2007). Moreover, like the PLRA, the Idaho requirement mandates that the prisoner meet procedural deadlines to exhaust his administrative remedies properly. *Butters v. Valdez*, 241 P.3d 7, 12 (Idaho Ct. App. 2010)

(relying on federal law interpreting 42 U.S.C. § 1997e(a)).

In the Ninth Circuit, a claim that a prisoner failed to exhaust administrative remedies is an affirmative defense that should ordinarily be brought as an unenumerated motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2002). Defendants have the burden to plead and prove exhaustion, and the reviewing court may look beyond the pleadings to resolve disputed issues of fact, if necessary. *Id.*

2. **ICC's Grievance Process**

Although it is a privately-run prison, ICC follows the same three-step administrative grievance procedure that the Idaho Department of Correction uses, which requires a prisoner to submit an informal concern form describing the problem, followed by the filing of a formal grievance, and appealing any adverse decision. (Dkt. 22-1, Affidavit of Chester Penn at ¶ 8.)

The prisoner begins this process by routing the concern form to the staff member most capable of addressing the problem. (Penn Aff., ¶ 11.) If the issue is not resolved, the prisoner must then complete a grievance form and file the grievance within 30 days of the incident. (*Id.* at ¶ 12.) The grievance form must contain specific information regarding the nature of the complaint, including the dates, places, names, and how the offender has been adversely affected. (Id. at ¶ 13.) The "grievance coordinator" at the prison will route a properly completed grievance to the appropriate staff member, who must respond within 10 days. (*Id.*)

**MEMORANDUM DECISION AND ORDER - 5**

After the staff member responds, the grievance coordinator forwards the grievance to the "reviewing authority," usually the deputy warden, who reviews the prisoner's complaint and the staff member's response and issues a decision. (*Id*. at ¶ 13.) If the prisoner is dissatisfied with the reviewing authority's decision, he may then appeal within 5 days to the "appellate authority," which is usually the facility head. (*Id*. at ¶ 14.) Once the appellate authority has issued its decision, the grievance is then routed back to the inmate, thus concluding the administrative review process. (*Id*.)

## DISCUSSION

Defendants do not seek dismissal of Plaintiff's entire Complaint, and they concede that Plaintiff "arguably" exhausted (1) a failure to protect claim based on inadequate staffing in the dining facility and (2) a medical claim based on an ICC physician cancelling Plaintiff's pain medication following oral surgery. (Dkt. 22-2, p. 13.) In their motion, Defendants instead target Plaintiff's examples of policies and practices at ICC that he has alleged show broader, institutional indifference to inmate safety. (Dkt. 1, pp. 4-5.) These include the following:

> (1) [a] failure to adequately train ICC staff to avoid assaults, (2) failure to have a sufficient number of correctional officers posted in Chow Hall, (3) failure to discipline ICC employees who contributed to the assault, (4) failure to punish prisoners who committed assaults, (5) failure to refer assaults for prosecution, (6) failure to adequately investigate assaults, (7) ICC staff ignoring prisoner safety, (8) that CCA's in-house medical unit purposefully conceals the incidence and extent of inmate injuries suffered as a result of the facility's recurrent violence; through official medical unit policies, such as the omission of any x-rays of severe assault injuries.

(Dkt. 22-2, pp. 12-13.) Defendants characterize these allegations as "claims" that were

**MEMORANDUM DECISION AND ORDER - 6**

not raised in prison grievances and must now be dismissed. (*Id*. at 11-13.) In contrast, Plaintiff responds that these are merely "factual indicia of the causes of action which [Plaintiff] later asserts, and are not themselves claims for which administrative remedies must be exhausted." (Dkt. 26, p. 9.) He contends that he properly exhausted all available remedies as to the core claims for relief in his Complaint. The Court agrees.

The primary purpose of the exhaustion requirement is to channel inmate complaints into an established administrative review process so that officials will have opportunity to resolve complaints informally before they are brought into court. *Porter v. Nussle*, 543 U.S. 516, 524-25 (2002). While the level of specificity necessary to complete a grievance is governed by the prison's rules, a grievance is not the equivalent of "a summons and complaint that initiates adversarial litigation," *see Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004), and it need not "contain every fact necessary to prove each element of an eventual legal claim," *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). It is instead sufficient if the prisoner brings a problem to the prison's attention in compliance with the prison's administrative rules such that officials can understand the nature of the complaint and have an opportunity to fix it. *See Id*.

Plaintiff fulfilled that essential purpose when he completed ICC's grievance process as to the dining hall assault and post-assault medical care. He began the process within 30 days of the assault by submitting an inmate concern form to Correctional Officer Jepsen. In that form, he recounted how ICC had not protected him:

I was assaulted in the chow hall as a result of ICC staff failing to properly

**MEMORANDUM DECISION AND ORDER - 7**

observe what is taking place there. This inmate snuck up from behind and hit me. I suffered a broken jaw that caused extensive damage. Also this inmate was having a relationship and visiting a former CCA staff member Ms. Slay. I feel that the last time I was at ICC in TC with Ms. Slay the reason I was assaulted is that she devulged [sic] sensitive information. To Brown about me, which caused a serious risk to my health and safety. Please look into this matter and see to it that there is enough CCA security staff in the chow hall when meals are going on it's obvious this was not the case when I was assaulted. I have discuss[ed] this with unit manager Johnson and investigator Archibald. Thank you.

(Dkt. 22-1, p. 37.) Nine days later, Plaintiff filed a formal grievance, attaching the concern form, and he described the problem as a "[f]ailure to protect/lack of security." (Dkt. 22-1, p. 38.) He requested that staff "make corrective actions" regarding the information in his concern form. (*Id*.) The grievance was denied at each level of review. (*Id*. at 39.)

In separate concern forms and grievances, Plaintiff also raised complaints about the medical care that he had received. In concern forms dated December 16, 17, and 18, 2009, he complained about the decision by ICC's medical staff to cancel pain medication that an oral surgeon had prescribed for him and about the failure of staff to provide him with a liquid nutritional supplement that he needed because his jaw was wired shut. (Dkt. 22-1, pp. 41-42.) He completed the grievance process as to those issues.[1] (*Id*. at 41-47.)

Based on the information contained in these grievances, the exhaustion requirement was satisfied as to the claims that Plaintiff has presently raised in this action.

---

[1] Plaintiff's grievance about the pain medication was denied at each level of review, but his request for the prison to maintain a sufficient quantity of the nutritional supplement on hand was granted. Because Plaintiff received relief at an intermediate level on that issue, he was not required to continue with appeals to exhaust his administrative remedies. *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005).

**MEMORANDUM DECISION AND ORDER - 8**

In particular, Plaintiff alerted prison officials that he had not been adequately protected from violence due to inadequate staffing and security at the prison, which he claims resulted in serious injuries. He also gave them notice of the pain that he was experiencing due to the cancellation of prescribed medication and to the inadequate supply of liquid nutrition following his surgery. These were his core concerns or problems, as Plaintiff understood them, which he presented to officials in compliance with the prison's administrative deadlines and specificity requirements.

To exhaust administrative remedies properly, a prisoner is not required to include every factual circumstance or an offer of evidentiary proof in a grievance that might later support a complete cause of action in a complaint, nor is he required to articulate legal theories. To be sure, if a prisoner seeks relief based on facts or theories that are too far afield from the subject matter that was brought before prison officials, then the prisoner cannot be said to have exhausted his remedies before raising those claims. Here, however, Plaintiff's grievances "provide[d] enough information ... to allow prison officials to take appropriate responsive measures." *Griffin*, 557 F.3d at 1121 (quoting *Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir. 2004). If more systemic failures existed at the prison, a thorough investigation by officials into the issues that Plaintiff brought to their attention would have presumably uncovered them.

Accordingly, Defendants' Motion to Dismiss will be denied.

**MEMORANDUM DECISION AND ORDER - 9**

# ORDER

**IT IS ORDERED** that Plaintiff's Motion to Dismiss (Dkt. 22) is DENIED.



DATED: October 21, 2011

Honorable Candy W. Dale
United States Magistrate Judge